<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

</td><td></td></tr>
</table>

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-2(c)**<br>**ORTIZ & ORTIZ, LLP**<br>32-72 Steinway Street, Ste. 402<br>Astoria, New York  11103<br>Tel. (718) 522-1117   Fax (718) 596-1302<br>*Attorneys for the Debtors*<br>**Norma E. Ortiz (no-4748)** | |
| In re:<br><br>JORGE L. PANEQUE AND<br>BELKIS L. PANEQUE,<br><br>           Debtors. | Case No. 13-25816 TBA<br><br>Hon. Vincent F. Papalia<br><br>Chapter  7 |
| ESTATE OF BASILIO VILLAREAL and BMV INC.,<br><br>      Plaintiffs,<br><br>vs.<br><br>JORGE L. PANEQUE, D/B/A PANEQUE<br>ACCOUNTING SERVICES, LEOBIGILDA<br>PANEQUE A/K/A BELKIS L. PANEQUE,<br><br>      Defendants. | Adv. Proc. No. 13-02023<br><br><br>Hearing Date: May 19, 2015<br>           10:00 a.m. |

### DECLARATION OF JORGE PANEQUE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Jorge L. Paneque, one of the above-captioned defendants in this instant case, hereby

declares as follows:

1

<u>Relevant Background</u>

1.      The facts stated herein are within my knowledge, and I am willing to testify to the

truth and accuracy of the statements contained herein.

2.      I am a public accountant, but do not hold a certified public accountant's license.

I met Basilio Villareal ("Basilio") 20 or 25 years ago and have rendered bookkeeping, tax

preparation, and payroll services to him and his corporation BMV since we met.  I am not

qualified to render financial advice to any of my clients, and I never provided financial advice to

Basilio.

3.      I do not dispute that I borrowed large sums of money from Basilio.  But I repaid

significantly more than I borrowed from him.  In fact, I obtained between 14 and 15 personal

loans from Basilio from approximately 2006 through 2009.

4.      My borrowing relationship with Basilio was completely unrelated to the

professional services I rendered to him, and was a very lucrative venture for Basilio.  My

recordkeeping of these transactions is imperfect, but detailed enough to demonstrate that I repaid

Basilio substantial sums of money in excess of what I paid him.  It is for that reason that he made

the number of loans he did to me.

5.      I do not dispute that I obtained personal loans from Basilio to renovate my

investment properties when, at times, I could not obtain institutional or conventional loans.  See

Page 50, Lines 7-25 of my deposition transcript (the "Transcript") annexed as Exhibit A.[1]  That

---

[1] A full and complete copy of the deposition transcript is annexed to the Plaintiff's
Motion for Summary Judgment.  I have only attached the relevant pages for the Court's
convenience.

doesn't mean I took the loans and knew, or should have known, I couldn't repay them. I

intended to repay every loan that I took from Basilio, and believed I had the level of business and

income to do so. In fact, I continued to repay the last loans I obtained from Basilio in 2009

through 2012. I just couldn't complete payment of my last three loans, pursuant to the terms of

our agreement, because of the financial difficulties I faced with my real estate investments and as

a result of personal problems I experienced with my son. See Pages 60 through 65 of the

Transcript annexed hereto as Exhibit B.

6.      In fact, I was deposed by the Chapter 7 Trustee in my bankruptcy case and

cooperated with the Trustee's forensic accountant in his review of my lending relationship with

Basilio. The Trustee concluded that the interest I paid to Basilio was, among other things,

usurious and he has commenced an action against Basilio to recover funds I paid him. See

Complaint filed under Adversary Proceeding Number 14-1894 and docketed as No. 72 in the

main bankruptcy case docket. A copy of the complaint is annexed for the Court's convenience

as Exhibit C.

7.      Annexed to the Trustee's complaint, as Exhibits A and B thereof, are copies of

summaries of my records of loans and payments to Basilio that I provided to the Trustee. Those

records reflect that from 2002 through 2012, I borrowed approximately $593,000 from Basilio

and repaid him $983,676.88. Although the Plaintiffs allege – and I do not concede – that one or

two of my checks bounced, my borrowing and repayment history clearly demonstrate that at no

time did I take advantage of Basilio, as alleged by the Plaintiff. All the loans between the

Plaintiffs and I were made at rates much higher than the prevailing market rates. In fact, the

Trustee's forensic accountant estimated the interest rates on the loans I took were between 20%

and 156%.   Basilio made so much money from the loans, he was very happy to lend me money

at rates much higher than the usury rate of 6% pursuant to N.J.S. 31:1-1 et seq. of the New Jersey

Revised Statutes.  If there was a disadvantaged party to the loans, it was me and not the

Plaintiffs.  However, the Plaintiffs carefully withhold any of this information from the Court in

their Motion for Summary Judgment.

8.       I do not deny that I did not fully repay the last loans I received from the Plaintiffs

pursuant to the terms of our agreement.  However, I never misrepresented my financial condition

to the Plaintiff, and never borrowed any money with the intent not to repay it.  Moreover, my

affirmative defense of payment is based on the aggregate of all the loans and repayments between

the me and the Plaintiffs.  As a result, the Plaintiffs did not suffer a loss of money from our loan

transactions:  they received full payment based on the usurious rates of our agreements.

A.       Loan Repayments

9.       I have reviewed my records and summarized some of my repayments of loans as

follows.  In 2006, I paid Basilio $197,000.  Annexed as Exhibit D are copies of the payments I

made in 2006.  In 2007, I paid Basilio $183,608.08.  Annexed as Exhibit E are copies of the

payments I made in 2007.  In 2008, I paid Basilio $136,842.69.  Annexed as Exhibit F are copies

of the payments I made in 2008.  In 2009, I paid Basilio over $44,000.00. Annexed as Exhibit G

are copies of the payments I made in 2009. In 2010, I paid Basilio over $44,000.00.  Annexed as

Exhibit H are copies of the payments I made in 2010.  In 2011, I paid Basilio $10,000.00.

Annexed as Exhibit I are copies of the payments I made in 2011.  In 2012, I paid Basilio

$2,675.00.  Annexed as Exhibit J are copies of the payments I made in 2012.  My payments for

multiple years past the final loan demonstrates my intention to repay the loans when I obtained

them.

   B.      Response to Declaration of Jennifer Rodriguez

   10.     I have reviewed the Declaration of Jennifer Rodriguez ("Jennifer") in Support of

the Motion for Summary Judgment, and have the following responses to her statements.  Jennifer

attended maybe 5 to 10 meetings in my office over the last few years.  However, other than

attending those meetings, she was not present during any of my loan negotiations or discussions

with Basilio.  She simply has no personal knowledge of my communications and dealings with

Basilio other than knowledge of the general tax and bookkeeping discussions we had in her

presence.

   11.     The assertion that I conducted secret meetings with Basilio, and excluded his

family members is belied by the fact that Jennifer attended meetings with me.  Moreover, I never

excluded any family member from a meeting, and I see no evidence in the motion to support that

I did so.   In fact, annexed as Exhibit K is a copy of a Declaration of Paula Mesa, an

employee of my firm.  Ms. Mesa confirms my recollection of the circumstances surrounding

Basilio's visits to my office.   Ms. Mesa remembers Basilio's visits to the office very clearly,

since she helped Basilio in and out of the office many times.

   12.     As set forth in Ms. Mesa's Declaration at Paragraphs 7, 8, and 9, Basilio's

appointments were scheduled in the same manner as any other client meeting.  I did not conduct

"secretive" meetings with Basilio, and never prevented anyone from attending my meetings with

him.  This is simply a false accusation by Jennifer.

   13.     There is no dispute that I rendered bookkeeping and tax accounting services to

Basilio, his wife, and an entity he owned for close to 25 years.  However, I did not render any

advice to him regarding his investments or financial decisions.  I am not qualified to do so.  In

fact, I asked him for advice regarding real estate investments.  At one time or another, Basilio

informed me, over the many years we did business, that he had an interest in the following real

estate properties:

> 4309 MEADOWVIEW AVE, NORTH BERGEN, NJ 07047-2707
>
> 402 60TH ST, WEST NEW YORK, NJ 07093-2250
>
> 404 60TH ST, WEST NEW YORK, NJ 07093-2250
>
> 406 60TH ST, WEST NEW YORK, NJ 07093-2250
>
> 713 17TH ST, UNION CITY, NJ 07087-1925
>
> 644 61ST ST, WEST NEW YORK, NJ 07093-1439
>
> 2504 NEW YORK AVENUE, UNION CITY, NJ

When I first began borrowing money from Basilio, I believed he had much more experience with

real estate investment than I did.

14.     I understand that Jennifer is suffering from the loss of a loved one, but I am

very offended by her accusations that I took advantage of a sick old blind man.  My relationship

with Basilio, and my extensive pattern of repayment, simply contradicts this contention.  In her

zeal to punish me for her loss, Jennifer has made false and inaccurate statements to the Court.

15.     For example, she asserts that Basilio lost his ability to see in 2000.  But I

witnessed him driving to my office many years after that time.  In fact, as set forth in Ms. Mesa's

Declaration at Paragraph 5, she witnessed Basilio come to my office without assistance after

2007.  A few years before he passed away, I witnessed him drive to my office.

16.     The allegation that Basilio came to my office on a weekly basis is also false.  My

office procedure for bookkeeping services is for clients to drop documents and records in my

office on a monthly basis.  My office provides this type of service to hundreds of clients at a

time.  I can not meet with each client to perform this service.  I only met with Basilio during

those months in which he had a question, as I did with other clients.  Ms. Mesa's Declaration

supports my recollections of Basilio's visits.  I also searched my office records for records of

appointments with Basilio.  The copy of the records I located are annexed hereto as Exhibit M.

I did not search for these records previously because I had not been accused of conducting secret

meetings with Basilio before the instant motion was filed.  These records confirm my and Ms.

Mesa's assertion that Basilio did not visit my office weekly.

17.     The allegation that Basilio had no source of income, other than rents and social

security, is also false.  I am aware of no less than five pieces of real estate the Basilio bought,

retained, and sold during our relationship.  Basilio told me that one of the properties, located at

2504 New York Avenue, Union City, New Jersey, was converted from a rental to a condominium

project.  He informed me that he retained a number of condominiums and sold 4 or 5 of the

remaining 8 units.  He informed me of a similar condominium conversion on properties known

as 1604 and  1606 and 1608 and 1609 Central Avenue in Union City.  I can not confirm at this

time that these statements were true, although I do recall seeing the proceeds of condominium

sales when preparing Basilio's books.  Therefore, although Basilio may have had less income in

some years than others, as evidenced by the 2009 letter attached to the Plaintiff's motion, he

certainly was not a destitute and unsophisticated man.  Basilio was a shrewed business man.

18.     Moreover, nowhere in Jennifer's Declaration does she assert that Basilio's

judgment or cognitive abilities were impaired when he lent me the funds.  That is because he was

of sound mind at all times we did business.  He was sound enough to accept my offers of

exorbitant interest.

19.     Jennifer's allegation in Paragraph 12 that I started to borrow money from Basilio

in 2008 is also false.  I began to borrow and repay Basilio as early as 2002 or 2003.   The interest

rates I paid him for my loans greatly exceeded the commercial rates available, and he profited

greatly from this lending relationship for close to a decade.

20.     Jennifer simply is not competent to testify about my dealings with Basilio.

Another example of her incompetence is contained in Paragraph 18 of her Declaration.  She

asserts that Basilio tried to collect funds from me for many years and did not realize I owed him

$164,000 until 2012.  That is simply untrue, as I testified in my deposition.  See Transcript Page

61, Lines 21 - 23, and Pages 62-63 annexed as Exhibit B.  I approached him to renegotiate the

few checks I could not repay in full and he gladly accepted my terms.

21.     I have reviewed the Answer to the Trustee's Complaint filed with the court by the

Plaintiffs in December 2014, a copy of which is annexed as Exhibit L, and assert that the

statements made therein further support my assertion that Jennifer either lacks sufficient

knowledge to testify to the facts she alleges in this case or has not been forthcoming with the

Court.  For example, in Paragraph 15 of the Answer, the Plaintiffs deny knowledge or

information sufficient to form a belief as to many allegations that involved the basic interactions

between Basilio and I, such as whether most of the transactions involved the exchange of checks.

In Paragraph 22 of the Answer, Plaintiffs deny knowledge of (a) the monthly interest payments I

made on loans even after I provided them with copies of the checks evidencing my payments,

and (b) the fact that Basilio gave me a check for $50,000 in October 208 and I agreed to pay him

$53,000 one month letter. That information should be in the records available to the Plaintiffs.

22.     It is important to note that in most instances, Basilio would lend me an amount of money without a promissory note. I would provide him with a post-dated check with the higher amount I agreed to repay him. In some cases, I would pay him interest until I paid back the full amount. In other cases, I simply paid back the full amount. If I was late in paying the full amount, Basilio would accept interest payments until I could repay the loan.

23.     For example, see copies of checks and repayment checks annexed hereto as Exhibit N for two loans I repaid Basilio. Page 1 of Exhibit N is a copy of the $26,000 loan I took from Basilio in January 2008. Page 2 of Exhibit N is a copy of my repayment check that cleared in February 2008 for $27,500. Page 3 is a copy of a $30,000 loan check I received in February 2009. Page 4 is a copy of the repayment check to Basilio, dated April 2009, that either bounced or was replaced by the check attached as Page 5 for $38,000 dated July 31, 2009. The checks reflect the fluidity with which Basilio and I transacted. However, they also demonstrate that Basilio profited from our relationship, was in no way taken advantage of, and was well compensated for his loans.

24.     I was unable to meet my obligations to Basilio, on a number of occasions, during our lending relationship. For example, I borrowed money from Basilio on four occasions in 2009. The last loan I took from Basilio was from a check dated December 2009. Of the four loans I took from Basilio that year, I repaid three. See checks annexed as Exhibit O.    The other two checks that the Plaintiffs were unpaid were made in 2008. Therefore, I continued to borrow and repay loans to Basilio after the 2008 check-loans were made to me. It is absurd to me that the Plaintiffs are asserting that I defrauded Basilio out of the money he lent me for three

particular checks but not for any of the other loans.

25.     For most of my loans, I was able to meet our agreement and made the principal

and interest payments.  It was not until over the year after the last loan from Basilio that I could

only make interest-only payments.  I intended to repay every loan I took from Basilio, and my

payment history and course of dealings with him supports such a finding.

26.     The Plaintiffs also fail to inform the Court that out of the last twelve loans I

entered into with Basilio, I repaid nine loans pursuant to our high interest terms.  In addition, the

Plaintiffs claim that the total amount borrowed from Basilio consisted of $160,500 comprised of

three checks I gave him for the sums of $77,000, $49,500 and $34,000.  However, those were not

the amounts I received from Basilio.  As was our pattern and practice, Basilio gave me a loan for

a lower amount and I wrote a check to him for a larger amount.  For the 3 checks in dispute,

Basilio lent me $145,000; the loans were comprised of checks in the amounts of $70,000,

$45,000, and $30,000.  See copy of checks annexed as Exhibit Q.

27.     The Plaintiffs also denied in their Answer to the Trustee's complaint having

knowledge as to whether the payments I made to Basilio were (1) of reasonably equivalent value;

(2) made when I was insolvent; (3) engaged in a business with unreasonably small capital; or (4)

that I intended to enter into the debt beyond my ability to pay.  Yet in the Plaintiffs' motion, they

allege that I was insolvent and should have known that the loans I entered into were beyond my

ability to repay.  These statements directly contradict with the judicial admissions from their

answer.

28.     In addition, the Plaintiffs seventh affirmative defense in their answer to the

Trustee's complaint is that I made my payments in good faith; yet their motion accuses me of

engaging in fraud for the same transactions.

29.     Finally, I dispute any allegations that when I borrowed the only funds I couldn't repay, I knew or should have known that I couldn't repay these loans.  I was current on my mortgage payments in 2008 and 2009, and did not contemplate an inability to refinance or resolve my investment mortgages until sometime in 2010, after I had already obtained the loans from Basilio.  I made no misrepresentations of my financial conditions to Basilio at any time, to induce him to lend me money.  See Transcript Page 74, Lines 22-25; Page 75, Lines 2-11; Page 83, Lines 4-9; Page 88, Lines 7-13. See copies of Transcript Pages as Exhibit P.   I continued to attempt to repay Basilio until I could no longer do so.

I declare under the penalty of perjury that the foregoing is accurate and true.

Dated: Union City, New Jersey
       May 12, 2015

                                        *S/Jorge Paneque*
                                        Jorge Paneque